THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHILIP M. KELLY, as Chapter 7 Bankruptcy Trustee in the Matter of John Loghry and Robyn Loghry,<br><br>Plaintiff,<br><br>vs.<br><br>LEXXUS INTERNATIONAL, INC., NATURAL HEALTH TRENDS CORP., TERRY LACORE, LISA GROSSMAN, CURTIS BROOME, and MARK WOODBURN,<br><br>Defendants. | 4:05CV3201<br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

Pending before the court is Defendants' motion to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1406(a) (filing 20).[1]

**BACKGROUND**

According to the complaint, Philip M. Kelly, the Loghry's bankruptcy trustee, is a resident of Scottsbluff, Nebraska; the Loghrys are residents of Arapahoe, Nebraska; defendant Lexxus International, Inc., ("Lexxus") is a Delaware corporation with its principal place of business in Dallas, Texas; defendant Natural Health Trends Corp. ("NHT") is a Florida corporation with its principal place of business in Dallas, Texas; defendant Terry LaCore is the Lexxus CEO and resides in Texas; defendant Mark Woodburn is the NHT CEO and resides in Texas; defendant Lisa Grossman is

---

[1] The motion to transfer was filed by all defendants, with the exception of defendant Curtis Broome, who has not yet been served. The motion to transfer also included motions to dismiss, which have been denied without prejudice (filing 63).

a Lexxus distributor and resides in Texas; and defendant Curtis Broome (who has not been served with process) is the former president of Lexxus and resides in Texas. (Filing 1, Complaint.)

The bankruptcy trustee, on behalf of the estate of John and Robyn Loghry, filed this action on August 17, 2005, claiming that defendants Lexxus and NHT breached a distributorship and stock agreement with Loghry by terminating Loghry's distributorship; that defendants Lexxus, NHT, Woodburn, and LaCore fraudulently induced Loghry to develop the Lexxus distribution network with no intent of honoring their promise to convey 1,000,000 shares of NHT stock to Loghry; that defendants LaCore, Woodburn, Broome, and Grossman conspired to induce Loghry to develop the Lexxus distribution network through false promises of stock, additional distributorship positions, and commissions; and that defendants Grossman and Broome tortiously interfered with Loghry's contract with Lexxus and NHT by creating evidence that Loghry violated company policy, leading to the termination of Loghry's distributorship. (Filing 1, Complaint.)

On May 13, 2004—more than a year prior to the lawsuit that was filed in this court—Lexxus and NHT brought an action against Loghry in the Northern District of Texas seeking a declaration that Lexxus and NHT were not parties to any agreement with Loghry by which Lexxus and NHT were obligated to issue stock to Loghry and that Lexxus was legally justified in terminating Loghry's distributorship agreement. Lexxus and NHT also claimed breach of contract for Loghry's violation of Lexxus company policy regarding recruitment of distributors and "product disparagement/trade slander" related to Loghry's disparagement of Lexxus and NHT and their products to other Lexxus distributors, potential distributors, and competitors. (Filing 1, Complaint, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas.)

Loghry asserted the following counterclaims in the Texas action: breach of contract against Lexxus and NHT for, among other things, terminating Loghry's distributorship and failing to pay Loghry commissions, as well as failure to convey to Loghry 1,000,000 shares of stock in NHT; fraudulent inducement and statutory fraud against Lexxus, NHT, LaCore, and Woodburn for their false promises of conveying stock to Loghry in exchange for Loghry's recruitment efforts; civil conspiracy against LaCore, Woodburn, and Grossman for inducing Loghry to develop the Lexxus distribution network through false promises of stock, additional distributorship positions, and commissions; and tortious interference with contractual relations against Grossman for creating evidence that Loghry violated company policy, leading to the termination of Loghry's distributorship.[2]  (Filing 54, Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas.)

## MOTION TO TRANSFER

In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.  Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper.  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case.  Thus, § 1404(a) involves two districts, either of which is one in which the litigation "might have been brought," while § 1406 is applicable when the first forum is demonstrably improper.

---

[2]A November 17, 2005, order in the Texas case states that Loghry's counterclaims of fraudulent inducement and civil conspiracy remain for trial. (Filing 71, Memorandum Opinion and Order, Case No. 3:04CV1039 in the United States District Court for the Northern District of Texas.)

3

The defendants initially argued that venue is not proper in the District of Nebraska. (Filing 27, Defs.' Br. Supp. Mot. Dismiss or Transfer, at 8-10.) However, in written responses to my question at the conclusion of the hearing on this matter regarding whether the court would be in error to transfer this case to the Northern District of Texas under 28 U.S.C. § 1404(a) instead of 28 U.S.C. § 1406(a), the defendants stated they "kn[ew] of no reason why this Court would not have the power or authority to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) (Filing 53, Letter by Counsel for Defendant Lisa Grossman); that "transfer to the . . . Northern District of Texas is appropriate under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a)" (Filing 55, Letter by Counsel for Defendants Terry LaCore & Mark Woodburn); and that "this case may be properly transferred to the . . . Northern District of Texas pursuant to 28 U.S.C. § 1404(a)" (Filing 54, Letter by Counsel for Defendants Lexxus International, Inc. & Natural Health Trends Corp.).

Because § 1404(a) allows transfer of cases where both the original and the requested venue are proper, and because the defendants have filed written statements admitting that a § 1404(a) transfer to the United States District Court for the Northern District of Texas would be appropriate, the defendants have necessarily admitted that venue is proper in both Nebraska and Texas and that this case "might have been brought"[3] in the Northern District of Texas. The plaintiff does not contend otherwise.

---

[3]The initial § 1404(a) inquiry must be whether this case "might have been brought" in the Northern District of Texas. Venue in a diversity case is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

Thus, the remaining question is whether the defendants have met their burden[4] of proving that transferring this lawsuit to the United States District Court for the Northern District of Texas pursuant to § 1404(a) would be "[f]or the convenience of parties and witnesses, in the interest of justice." In analyzing § 1404(a) motions to transfer, federal courts are to balance the convenience of parties, the convenience of witnesses, and the interests of justice. "Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

The "convenience" factors in this case are a "wash"—that is, these factors do not weigh in either party's favor because the District of Nebraska is convenient for the plaintiff, who lives here, and the Northern District of Texas is convenient for the defendants, who live and conduct business in Texas. In this case, the pivotal factor is the third—the interest of justice.

The "interest-of-justice" factor is "to be considered on its own and [is] an important" factor because "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3854, at 439-40 (1986) (footnotes omitted). One aspect of the "interest-of-justice" factor that is frequently considered is "the desire to avoid multiplicity of litigation from a single transaction." Id. at 441. Supreme Court dictum suggests that this consideration should be given great weight:

---

[4]Federal courts generally give "considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

5

> "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers."

Id. (quoting Continental Grain Co. v. Barge FBL—585, 364 U.S. 19, 26 (1960)). "Thus frequently cases have been transferred to a forum in which other actions were pending from the same transaction." Id. at 442.

For example, May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1166 (E.D. Mo. 1995), was a Missouri case where an employer brought suit against one of its former executive employees and against a business competitor alleging breach of the employment contract and tortious interference with the employment contract. The United States District Court for the Eastern District of Missouri granted a § 1404(a) transfer to Pennsylvania, where a declaratory judgment action filed by the former employee and the business competitor involving the same employment contract was pending. The court found that while neither jurisdiction would be more convenient for the parties and witnesses, the interests of justice weighed in favor of transfer because (a) all parties were subject to personal jurisdiction in Pennsylvania, so the action "might have been brought" there as required by § 1404(a); (b) venue was proper in Pennsylvania because the parties were deemed to "reside" there; and (c) litigating "related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." Id. (internal citation omitted). See also Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 503 n.2 (8th Cir. 1999) (in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case as matter of federal comity; when parallel litigation

has been initiated in separate courts, first-filed rule[5] gives priority to party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings).

The plaintiff in the case now before me admits that "many, if not most, of the disputed issues involved in this case are likely to be resolved at the trial of the Texas litigation"; "the Texas litigation will likely resolve not just the tort claims asserted against the Defendants but . . . the contract claims as well"; and there is an "overlap in discovery between the instant case and the Texas litigation." (Filing 56, Post-Hearing Br. on Transfer, at 2-4.) Further, a review of the pleadings in the Texas and Nebraska actions establishes that the facts, claims, and defendants in both cases are

---

[5]The plaintiff argues that because Lexxus and NHT filed a declaratory judgment action in Texas instead of agreeing to the plaintiff's settlement demand, there are "red flags," or compelling circumstances, that militate against applying the first-filed rule here. I do not find compelling circumstances here, as Loghry's first demand letter threatening suit was sent to Lexxus and NHT on or about March 26, 2004, and Lexxus and NHT did not file their Texas action for another month and a half—May 13, 2004 (shortly after Loghry's second demand letter that contained a copy of an unfiled complaint to be filed in Nebraska). In addition, Loghry's Nebraska lawsuit was not filed until August 17, 2005—over 15 months from the filing of the Texas action. These lengthy time periods do not suggest a "race to the courthouse" in order to usurp Loghry's forum choice. See Anheuser-Busch, Inc. v. Supreme Intern. Corp., 167 F.3d 417, 419 (8th Cir. 1999) ("red flag" existed when Anheuser filed declaratory judgment action in Missouri instead of responding to Supreme's demand letter within five-day deadline and when Supreme filed action in Florida less than two weeks after its demand letter to Anheuser). Further, due to the Loghry's assertion of counterclaims in the Texas lawsuit, both the Nebraska and Texas lawsuits involve the same claims; there is no evidence that Lexxus and NHT promised or indicated in some manner that they would not sue; and Loghry has not shown that he will suffer undue burden if this case proceeds in Texas. Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006-07 (8th Cir. 1993) (discussing "red flags" in context of "first-filed" rule); Schwendiman Partners, LLC v. Hurt, 71 F. Supp. 2d 983, 987-88 (D. Neb. 1999) (same).

nearly identical, and that the witnesses, relevant documents, and other discovery would be the same or similar in both cases. Allowing both of these cases to proceed in separate jurisdictions would create a realistic possibility of inconsistent rulings, double recovery, judicial inefficiency, and "wastefulness of time, energy and money that § 1404(a) was designed to prevent." 15 Federal Practice and Procedure § 3854, at 441.

Accordingly, I shall grant the defendants' motion to transfer this matter to the United States District Court for the Northern District of Texas, Dallas Division.

IT IS ORDERED:

1. The defendants' motion to transfer this action (filing 20) to the United States District Court for the Northern District of Texas, Dallas Division, is granted pursuant to 28 U.S.C. § 1404(a);

2. The Clerk of the United States District Court for the District of Nebraska is directed to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division;

3. The Clerk of the United States District Court for the Northern District of Texas is advised that this Nebraska case appears to be related to a case pending in the Northern District of Texas, to wit: Lexxus International, Inc., et al. v. Loghry, 3:04CV1039, which is assigned to Judge Lindsay;

4. Upon the transfer of this case, the Clerk of the United States District Court for the District of Nebraska shall close this case for statistical purposes.

February 21, 2006.

                              BY THE COURT:
                              s/ *Richard G. Kopf*
                              United States District Judge